FILED ___ LODGED
RECEIVED ___ COPY

MAR 3 1 2003

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Alloco and Ralph Alloco, wife and husband, | No. CIV 01-2220-PHX-ROS |
| Plaintiffs, | **ORDER** |
| vs. | |
| Metropolitan Life Insurance Company, a foreign corporation, | |
| Defendant. | |

Pending before the Court is Defendant's Motion for Partial Summary Judgment on All Claims Relating to Long Term Disability Benefits [Doc. #19], filed March 15, 2002. Plaintiff submitted a Response [Doc. #25] on April 22, 2002, and Defendant filed a Reply on May 17, 2002 [Doc. #27]. For the following reasons, partial summary judgment will be granted for Defendant on Plaintiff's claims relating to long term disability benefits.[1]

---

[1]The Court vacated the hearing scheduled for October 28, 2002 [Doc. #30], because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions and oral argument would not have aided Court's decisional process. See Mahon v. Credit Bur. of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999); Partridge v. Reich, 141 F.3d 920, 926 (9th Cir. 1998); Lake at Las Vegas Investors Group, Inc. v. Pacific. Dev. Malibu Corp., 933 F.2d 724, 729 (9th Cir. 1991), cert denied, 503 U.S. 920 (1992).

1   **I. Facts**

2          The following facts are not in dispute. At all relevant times, Plaintiff Cynthia Allocco

3   was employed as a telephone service center representative at American Express Travel

4   Related Services, Inc. ("AMEX"). Defendant's Statement of Facts ("SOF") ¶1. Plaintiff was

5   eligible, as an employee, for benefits under AMEX's group insurance benefit program

6   ("benefits plan"). SOF ¶2. Relevant parts of the plan are administered by Defendant,

7   Metropolitan Life Insurance Company. SOF ¶3. The benefit plan provided life insurance

8   and business travel accident insurance to employees at AMEX's expense. SOF ¶8. The

9   benefit plan also allowed certain employees, including Plaintiff, to enroll in a plan for long-

10  term disability benefits ("LTD") at their own expense. SOF ¶¶3-6. Plaintiff paid premiums

11  on her LTD coverage under the benefit plan. SOF ¶7.

12         In 2000 and 2001, Plaintiff and Defendant engaged in a series of disputes related to

13  Plaintiff's alleged development of fibromyalgia and her subsequent requests for benefits. On

14  May 9, 2000, Plaintiff submitted a claim for salary continuation benefits to AMEX. SOF

15  ¶12. Defendant denied this application for benefits on June 20, 2000. SOF ¶13. On July 24,

16  2000, Plaintiff filed an administrative appeal with Defendant in accordance with the

17  provisions of the benefit plan, and the appeal was denied on July 24, 2000. SOF ¶14. On

18  about January 29, 2001, Plaintiff contacted Defendant and applied for LTD benefits due to

19  her fibromyalgia. SOF ¶17. Defendant denied Plantiff's claim for LTD benefits in a letter

20  dated September 12, 2001. SOF ¶19, Exh. G to SOF. That letter informed Plaintiff that she

21  could appeal the denial of her claim for LTD benefits within 60 days of receiving the notice

22  of denial. SOF ¶20, Exh. G to SOF.

23         Plaintiff, however, never filed an appeal of the denial of her LTD benefits. SOF ¶21.

24  On October 16, 2001, Plaintiff filed suit in state court, alleging claims for breach of contract

25  and bad faith under state law. SOF ¶22, Exh. B to Notice of Removal. The state law suit

26  was then removed to federal court on Nov. 14, 2001 (Doc. #1). Defendant contends that her

27

28

1   failure to appeal the denial of LTD benefits is dispositive of any claim based on LTD
2   benefits.

3   **II. Discussion**

4        As an initial matter, Defendant contends that Plaintiff's LTD benefit plan is covered
5   by the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001-
6   1461 (ERISA), and that Plaintiff's state law claims for LTD benefits are preempted by
7   ERISA.   Concomitantly, Defendant contends that Plaintiff failed to exhaust her
8   administrative appeals pursuant to ERISA, requiring that her claim for LTD benefits be
9   dismissed.

10       Three issues must be resolved: first, whether the LTD plan is covered by ERISA;
11  second, whether ERISA preempts Plaintiff's state law causes of action; and third, if her
12  claims are governed by ERISA, whether Plaintiff has failed to exhaust her remedies under
13  ERISA.

14       **A.  Is the plan covered by ERISA?**

15       Whether Plaintiff's LTD benefit plan is an "employee benefit plan" is defined by
16  ERISA.  "ERISA defines an 'employee benefit plan' to include, among others, 'any plan,
17  fund, or program ... established or maintained by an employer ... for the purpose of providing
18  for its participants or their beneficiaries, through the purchase of insurance ... medical,
19  surgical, or hospital care or benefits." Stuart v. UNUM Life Ins. Co. of America, 217 F.3d
20  1145, 1149 (9th Cir. 2000) (quoting Qualls ex rel. Qualls v. Blue Cross of California, Inc.,
21  22 F.2d 839, 843 (9th Cir. 1994); 29 U.S.C. §§1002(1), (3)).  Also, "[t]he existence of an
22  ERISA plan is a question of fact, to be answered in light of all the surrounding circumstances
23  from the point of view of a reasonable person." Stuart, 217 F.3d at 1149 (quoting Zavora v.
24  Paul Revere Life Ins. Co., 145 F.3d 1118, 1120 (9th Cir. 1998)).

25       A benefit plan can fall outside the coverage scope of ERISA if it meets the four
26  requirements under the Department of Labor's "safe harbor" regulation, 29 C.F.R. §2510.3-
27  1(j).  These four requirements are:

28

- 3 -

1    (1) No contributions are made by an employer or employee organization;

2    (2) Participation in the program is completely voluntary for employees or members;

3    (3) The sole functions of the employer of employee organization with respect to the

4    program are, without endorsing the program, to permit the insurer to publicize the program

5    to employees or members, to collect premiums through payroll deductions or dues checkoffs

6    and to remit them to the insurer; and

7    (4) The employer or employee organization receives no consideration in the form of

8    cash or otherwise in connection with the program, other than reasonable compensation,

9    excluding any profit, for administrative services actually rendered in connection with payroll

10   deductions or due checkoffs.

11   Id.; Stuart, 217 F.3d at 1149. See also The Meadows v. Employers Health Ins., 826 F.Supp.

12   1225, 1228 (D. Ariz. 1993). Moreover, "an employer's failure to satisfy just one requirement

13   of the safe harbor regulation conclusively demonstrates that an otherwise qualified group

14   insurance plan is an employee welfare benefit plan under ERISA." Stuart, 217 F.3d at 1151-

15   2. See also The Meadows, 826 F.Supp at 1228 ("behavior inconsistent with any one of the

16   four criteria constitutes evidence of the establishment of an ERISA plan").

17   In this case, Plaintiff contends that her LTD benefit plan was not covered by ERISA.

18   Plaintiff notes that she paid her own premiums on the LTD benefit plan, and participation

19   was voluntary, which meets at least the first two prongs of the safe harbor requirement.

20   Plaintiff's argument fails, however, for two reasons. First, the LTD benefit plan cannot be

21   viewed in isolation from the overall benefit plan provided by AMEX, which clearly is an

22   ERISA plan. Second, the LTD plan does not meet the requirements of the third prong of the

23   safe harbor regulation.

24   First, other circuits have specifically held that particular components of an employee

25   benefit plan cannot be "severed" for purposes of determining whether the plan meets the safe

26   harbor requirements. In Gaylor v. John Hancock Mutual Life Ins. Co., 112 F.3d 460 (10th

27   Cir. 1997), the Tenth Circuit considered an analogous case where the plaintiff purchased

28

- 4 -

1    optional disability coverage without contribution from her employer. However, because the
2    plaintiff had enrolled in an accidental death and dismemberment plan where the employer
3    *did* contribute, the Court evaluated the "employee welfare benefit plan" as a whole. The
4    Court held that, "[f]or purposes of satisfying the safe harbor provision, [the plaintiff]
5    attempts to sever her optional disability coverage from the rest of the benefits she received
6    through her employer's plan. 'This cannot be done because the [optional] coverage was a
7    feature of the Plan, notwithstanding the fact the cost of such coverage had to be contributed
8    by the employee.'" Gaylor, 112 F.3d at 463 (quoting Smith v. Jefferson Pilot Life Ins. Co.,
9    14 F.3d 562, 567 (11th Cir. 1994)). The Seventh Circuit has also recently adopted this
10   approach. See Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 538 (7th Cir. 2000) ("For
11   purposes of determining whether a benefit plan is subject to ERISA, its various aspects ought
12   not be unbundled.").

13            Without addressing this precise situation, the Ninth Circuit has held that courts should
14   look at an employer's benefit program as a whole to determine if the plan is covered by
15   ERISA. In Peterson v. American Life & Health Ins. Co., 48 F.3d 404 (9th Cir. 1995), the
16   Court considered an employer plan where only one partner was the only employee covered
17   by a particular policy. ERISA does not cover an employer plan where the only beneficiary
18   is a partner in a partnership, but the Court evaluated the employer program, which also
19   covered other employees under separate policies, in its entirety. The Court found the features
20   of one component of the plan "not determinative," concluding that "the [partner's] policy was
21   just one component of [the employer's] employee benefit program and that the program,
22   taken as a whole, constitutes an ERISA plan." Peterson, 48 F.3d at 407. The Ninth Circuit's
23   approach therefore is consistent with that of other circuits that evaluate the "employee benefit
24   program ... as a whole." Significantly, Plaintiff does not dispute that AMEX's overall benefit
25   plan is covered by ERISA and does not meet the safe harbor requirements.[2]

26

27            [2]Plaintiff does suggest that the Court should broadly construe the scope of the safe
28   harbor exception, in order to limit the scope of ERISA preemption, an argument addressed

- 5 -

1    Moreover, even standing alone, Plaintiff's LTD benefit plan does not satisfy the third
2    prong of the safe harbor requirements. The third prong narrowly limits the employer's
3    involvement in an employee benefit plan to a few administrative functions, "without
4    endorsing the plan." Stuart, 217 F.3d at 1149. Here, the undisputed facts show that AMEX
5    participated in the administration of the LTD benefits to a material extent bringing the
6    Plaintiff's plan outside the scope of the safe harbor.

7    First, AMEX designated the employees who were eligible to participate in the LTD
8    Plan. Affidavit of Laura Sullivan ¶9 ("Sullivan Aff."), Exh. A to SOF. Designation of
9    eligible employees may establish sufficient involvement of an employer in a plan to bring the
10   plan under ERISA. See The Meadows, 826 F.Supp. at 1230 (designation of employees
11   eligible for a benefit plan brings plan outside scope of safe harbor provision). Second,
12   AMEX was responsible for filing forms with the Department of Labor required by ERISA,
13   which is evidence of an ERISA plan. Sullivan Aff. ¶10; see Pacificare, Inc. v. Martin, 34
14   F.3d 834, 837 (9th Cir. 1994). Next, AMEX is designated as Plan Sponsor, and the Plan
15   Administrator is designated as an Administration Committee of AMEX. Sullivan Aff. ¶11;
16   "2000 Benefits Handbook," Exh. B to SOF, at MET 0592.[3] Acting as administrator of the
17   benefit plan tends to show that the employer endorsed the plan. See Sarraf v. Standard Ins.
18   Co., 102 F.3d 991, 993 (9th Cir. 1996).

19

20   _____

21   in Part II.B, infra. This Court is obligated to follow Ninth Circuit law on the scope of ERISA
     preemption. See Agostini v. Felton, 521 U.S. 203, 237-8 (1997) (courts should follow
22   directly controlling appellate precedent until explicitly overruled); United States v. Pacheco-
     Zepeda, 234 F.3d 411, 414 (9th Cir. 2001) (holding same). Moreover, Plaintiff confuses the
23   interpretation of the safe harbor regulation and the ERISA savings clause, discussed in Part
     B, which are distinct statutory provisions, each with its own interpretation. Plaintiff's savings
24   clause arguments are inapplicable to evaluating whether Defendant's plan meets the safe
25   harbor requirements.

26       [3]Plaintiff points out that Defendant admits that it administers at least some parts of
27   claims under the LTD plan. SOF ¶3. However, AMEX, not Defendant, is listed in the
     Benefits Handbook as "Plan Administrator," from which it can be inferred that AMEX
28   endorsed the plan.

1    Finally, AMEX created a Summary Plan Description for distribution to AMEX
2    employees which contained a section entitled "Summary of ERISA Rights."  Sullivan Aff.
3    ¶12.   Specific reference in the plan to ERISA is additional evidence that the plan was meant
4    to be covered by ERISA.  See Stuart, 217 F.3d at 1154 ("The policy also tended to prove that
5    Desert Hospital and UNUM intended to create an ERISA plan because the Policy specifically
6    refers to ERISA.").  See also Thompson v. American Home Assurance Co., 95 F.3d 429, 437
7    (6th Cir. 1996) ("[W]here the employer provides a summary plan description that specifically
8    refers to ERISA in laying out the employee's rights under the policy . . . the employee is
9    entitled to presume that the employer's actions indicate involvement sufficient to bring the
10   plan within the ERISA framework.").

11   Considering these features together, the Court finds that AMEX created an ERISA
12   plan when providing LTD benefits.  Plaintiff's arguments are perfunctory and unsupported
13   by persuasive case law.  Plaintiff's LTD benefit plan does not meet the requirements of the
14   safe harbor, and is an employee benefit plan covered by ERISA.

15   **B. Does ERISA preempt the state law claims?**

16   ERISA's preemption clause, §514(a), 29 U.S.C. §1144(a), states that ERISA
17   provisions "shall supersede ... State laws" to the extent those laws "relate to employee benefit
18   plans."  However, the statute also provides an exception, a broadly-phrased savings clause,
19   §514(b)(2)(A), 29 U.S.C. §1144(b)(2)(A), which exempts "any law of any State which
20   regulates insurance."  See UNUM Life Ins. Co. of America v. Ward, 526 U.S. 358, 363
21   (1999).  ERISA thus broadly preempts claims relating to employee benefit plans, including
22   bad faith claims, unless those claims fall within the ambit of the savings clause.  The precise
23   meanings of the scope of these clauses has been the subject of much interpretation by many
24   courts.  Ward, 526 U.S. at 363.

25   In Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987), the Supreme Court held that
26   Mississippi's common law tort of bad faith did not "regulate insurance" within the meaning
27   of ERISA's savings clause, and therefore was preempted by ERISA.  The Court analyzed the
28

1   connection between the tort and insurance regulation both in terms of the "common sense"
2   view of the savings clause language, and in terms of the three-part rubric established by the
3   McCarron-Ferguson Act, 15 U.S.C. §1011 et seq. Under the "common sense" view, the
4   Court concluded that "a law must not just have an impact on the insurance industry, but must
5   be specifically directed toward that industry." Pilot Life, 481 U.S. at 50. However, the
6   Court found that "the roots of [the bad faith] law are firmly planted in the general principles
7   of Mississippi tort and contract law." Id.

8       The Supreme Court then turned to the three factors defining the "business of
9   insurance" under the McCarron-Ferguson Act, that is: (1) whether the practice has the effect
10  of transferring or spreading a policyholder's risk; (2) whether the practice is an integral part
11  of the policy relationship between insurer and insured; and (3) whether the practice is limited
12  to entities within the insurance industry. Pilot Life, 481 U.S. at 48-9. The Court found that
13  the tort of bad faith "at most meets one of the three criteria," an attenuated connection to the
14  insured-insurer relationship, but neither functioned to spread policyholder risk nor was
15  limited to the insurance industry. Id. at 50-51. Therefore, Mississippi's tort of bad faith was
16  found to be preempted by ERISA benefit plans.

17      The Ninth Circuit, following Pilot Life, concluded that Arizona's tort of bad faith is
18  "flatly preempted" by ERISA and does not fall under the savings clause. Tingey v. Pixley-
19  Richards West, Inc., 953 F.2d 1124, 1133 (9th Cir. 1992). "Like the Mississippi law against
20  bad faith insurance settlement practices [at issue in Pilot Life], the Arizona tort [of bad faith]
21  'arises from a breach of [a] duty . . . implicit in all contracts.' Such a law fails the . . . test for
22  inclusion under the saving clause . . . and is preempted under Pilot Life's express authority."
23  Tingey, 953 F.2d at 1133 (quoting Clearwater v. State Farm Mut. Auto Ins. Co., 164 Ariz.
24  256, 792 F.2d 719, 721 (1990)) (citations omitted). The Court does not find the Ninth
25  Circuit's citation to controlling Arizona law establishing the tort of bad faith as mere
26  happenstance. The citation to Clearwater v. State Farm Mut. Auto Ins. Co., 792 F.2d 719,
27  721 (1990) by the Ninth Circuit indicates to the Court that it was plainly aware that its

28

decision foreclosed in favor of ERISA the *tort* cause of action of bad faith as well as precluding an action for contractual bad faith.  See also Rawlings v. Apodaca, 151 Ariz. 149, 153, 726 P.2d 565, 569 (1986) ("The law implies a covenant of good faith and fair dealing in every contract.  The duty arises by virtue of a contractual relationship.") (citations omitted).  Thus generally, bad faith claims against insurance carriers are preempted by ERISA if a plan exists, notwithstanding the savings clause.  Bast v. Prudential Ins. Co. of America, 150 F.3d 1003, 1008 (9th Cir. 1998); Kanne v. Connecticut General Life Ins. Co., 867 F.2d 489 (9th Cir. 1988) (en banc).

Plaintiff argues that the Supreme Court's recent decision in Ward narrowed the holding of Pilot Life such that courts should reevaluate whether bad faith claims are still preempted by ERISA.[4]  Plaintiff urges that the savings clause be read broadly to include the tort of bad faith as a "law ... which regulates insurance."

Plaintiff's reliance on Ward is misplaced.  In Ward, the Court *declined to reconsider* whether any particular state cause of action was within the scope of the savings clause, because the plaintiff sued *under ERISA* to recover benefits under the terms of his plan.  Thus, the issue of whether a state cause of action was preempted by ERISA was not before the Supreme Court.  See Ward, 526 U.S. at 377 ("The case therefore does not raise the question whether §502(a) provides the sole launching ground for an ERISA enforcement action.")  In arguing Ward, the Solicitor General, as *amicus curiae*, took the position that Pilot Life did not mandate that state causes of action be broadly preempted under ERISA.  The Court dismissed this argument, stating, "[w]e need not address the Solicitor General's current argument, for Ward has sued ... for benefits due [under ERISA]...." Ward, 526 U.S. 376, n.7.

Plaintiff has urged this Court to infer from a footnote in Ward that the Supreme Court is inclined the narrow the scope of ERISA preemption by expanding the scope of the savings

---

[4]Plaintiff concedes that the breach of contract claim is preempted by ERISA, noting that the "preemption is so extensive that an insured does not even have the long-held right to sue his insurer for simple breach of the insurance contract."  Pl's Resp. at 8, n.2.

1  clause.[5]  Plaintiff's position is fanciful.  For one, the footnote cannot be fairly interpreted to

2  hold that the scope of the savings clause (much more the holding in Pilot Life) is an open

3  question.  Second, this Court has no authority to blithely ignore Supreme Court and Ninth

4  Circuit precedent to the contrary.[6]  See Agostini v. Felton, 521 U.S. 203, 237 (1997) ("We

5  do not acknowledge . . . that other courts should conclude our more recent cases have, by

6  implication, overruled an earlier precedent."); United States v. Pacheco-Zepeda, 234 F.3d

7  411, 414 (9th Cir. 2001) ("speculation [that a case may be overruled] does not permit us to

8  ignore controlling Supreme Court authority").  The Ninth Circuit law is that Arizona's tort

9  of bad faith is "flatly preempted" by ERISA under the analysis of the nearly identical statute

10  considered by the Supreme Court in Pilot Life.  Ward, far from overruling Pilot Life,

11  reiterates its holding that Mississippi's tort of bad faith, grounded in general principles of tort

12  and contract law, does not regulate insurance within the meaning of ERISA's savings clause.

13  Ward, 526 U.S. at 369.

14          Plaintiff cites a number of district court cases in support of her position that Ward did

15  alter the previous understanding of Pilot Life.  Plaintiff's primary authority, Hill v. Blue

16  Cross Blue Shield of Alabama, 117 F.Supp.2d 1209 (D. Ala. 2000) rests on shaky ground.

17  For one, the case has been overruled by the Eleventh Circuit, which deemed the decision

18

19          [5]Plaintiff also cites to footnote 6, which refers to the Court's recogniton that "applying

20  the States' varying insurance regulations creates disuniformities for 'national plans that enter
    into local markets to purchase insurance.'  As we have observed, however, '[s]uch

21  disuniformities ... are the inevitable result of the congressional decision to 'save' local

22  insurance regulation'" Ward, 526 U.S. at 376, n.6 (quoting Metropolitan Life Ins. Co. v.
    Massachusetts, 471 U.S. 724, 747 (1985)).  This footnote merely recognizes the point that

23  some state regulations are indeed saved from ERISA preemption by the savings clause. See

24  Metropolitan Life, 471 U.S. at 741.  The footnote gives no hint that Ward altered the
    requirements for determining whether a law "regulates insurance" is thus covered by the

25  savings clause.

26          [6]It has not escaped the Court's notice that Plaintiff's counsel may be in violation of

27  Arizona Rule of Professional Conduct ER 3.3 by his failure to cite Tingey.  Further, citation
    to a surfeit of decisions that have been overruled is not in keeping with principles of the

28  noble profession in which we are all privileged to participate.

1   "flawed." Gilbert v. Alta Health & Life Ins. Co., 276 F.3d 1292, 1300-1 (11th Cir. 2001).[7]

2   The Eleventh Circuit in Gilbert disagreed both with the district court's construction of

3   Alabama tort law and with the premise that Ward created an inconsistency with prior

4   precedent. Id. at 1299-1301. Further, the decision does not undo Ninth Circuit law explicitly

5   holding that Arizona's tort of bad faith is preempted by ERISA.  Arizona's tort of bad faith

6   originates from general contract law principles, and is applicable in the context of many non-

7   insurance contracts. Compare Hill, 117 F.3d at 1212 ("The only targets for the tort of bad

8   faith in Alabama are insurance companies") with Rawlings, 151 Ariz. at 158-160 (tort actions

9   for bad faith allowed for variety of special contractual relationships).  When determining

10  whether a law "regulates insurance," this distinction is critical.[8]

11      Finally, many courts have found that Ward did not create an inconsistency with Pilot

12  Life. See, e.g., Jabour v. CIGNA Healthcare of Ca., Inc., 162 F.Supp.2d 1119, 1127 (C.D.

13  Cal. 2001) ("This Court agrees with [decisions] finding that the Ward decision merely

14  *applied* (and perhaps *clarified*) the criteria established by Pilot Life for determining whether

15  a state law is exempted from preemption by the ERISA saving clause; Ward did not

16  *transform* that legal analysis in a manner which would require that decisions relying on Pilot

17

18  _____

19      [7]Plaintiff also relies on the Alabama case which the Eleventh Circuit reversed. See
20  Gilbert v. Alta Health & Life Ins. Co., 122 F.Supp.2d 1267 (N.D. Ala. 2000), rev'd Gilbert,
    276 F.3d at 1301.

21

22      [8]Plaintiff's other cases, many of which are unpublished, are not any more applicable
    or persuasive, particularly because they concern state laws limited to the insurance industry.
23  In Lewis v. Aetna U.S. Healthcare, Inc. (N.D. Okla. 1999), the district court noted that the
    bad faith tort at issue was limited to insurance claims and arose specifically out of the
24  insured-insurer relationship. Hamilton v. United Healthcare of Louisiana, Inc., 2001 WL
    536300 (E.D. La. 2001) dealt with a Louisiana statute specifically regulating the insurance
25  industry. Selby v. Principal Mutual Life Ins. Co., 2000 WL 178191, *3 (S.D.N.Y. 2000)
26  discussed "a state statute specifically directed toward the insurance industry which defendant
    concedes is saved from preemption." Finally, Colligan v. UNUM Life Ins. Co. of America,
27  2001 WL 533742, *3 (D. Colo. 2001) addressed a bad faith cause of action "explicitly
28  limited to the insurance industry."

1  Life be reconsidered."); Walker v. Southern Co. Serv., Inc., 279 F.3d 1289, 1292-3 (11th Cir.

2  2002) ("[Ward] does not create a new standard for analyzing ERISA's savings clause.")

3      Plaintiff's claims for both bad faith and breach of contract are preempted by ERISA.[9]

4  Therefore, Plaintiff can only state a cause of action under ERISA.

5      **C.  Did Plaintiff fail to comply with the requirements of ERISA?**

6      Having determined that Plaintiff's LTD benefits are covered by ERISA, and that

7  Plaintiff's state law claims are preempted, the Court also finds that Plaintiff's claims relating

8  to LTD benefits are barred under ERISA, because she failed to exhaust her administrative

9  remedies.[10]

10     "[A] claimant must avail himself or herself of a plan's own internal review procedures

11 before bringing suit in federal court." Diaz v. United Agricultural Employee Welfare Benefit

12 Plan and Trust, 50 F.3d 1478, 1483 (9th Cir. 1995); see also Sarraf, 102 F.3d at 993 (applying

13 administrative exhaustion requirment).  "[T]he federal courts have the authority to enforce

14 the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they

15 should usually do so." Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980).  Moreover, "the

16 exhaustion doctrine is consistent with ERISA's background, structure and legislative history

17 and serves several important policy considerations." Diaz, 50 F.3d at 1483.

18 _____

19     [9]Plaintiff makes a number of spirited policy arguments criticizing long-standing

20 judicial interpretations of ERISA, grounded in both judicial and academic commentary. See, e.g., Andrews-Clarke v. Travelers Ins. Co., 984 F.Supp. 49 (D.Mass. 1997) ("ERISA has

21 evolved into a shield of immunity which thwarts the legitimate claims of the people it was designed to protect"); Bogan, Protecting Patient Right Despite ERISA: Will the Supreme

22 Court Allow States to Regulate Managed Care?, 74 Tul.L.Rev. 951 (2000).  The arguments

23 belong in the appellate court forum.  Such policy arguments are misdirected to this Court, which is bound by precedent.

24

25     [10]Ralph Allocco, Plaintiff Cynthia Allocco's husband, is also a named Plaintiff. Defendant argues, and Plaintiff does not refute, that Ralph Allocco does not have standing

26 to sue for benefits under ERISA. See Franchise Tax Board of Cal. v. Construction Laborers

27 Vacation Trust of So. Cal., 463 U.S. 1 (1983). Further, because Cynthia Allocco's claims relating to LTD benefits fail, the Court need not determine whether Ralph Allocco has

28 standing to sue for the same claims.

- 12 -

1    Plaintiff concedes that she did not exhaust her administrative appeals.[11]  Plaintiff
2    cursorily argues that pursuit of an appeal would have futile.  Though evidence that an appeal
3    would have been futile can serve to waive the administrative exhaustion requirement,
4    Plaintiff fails to provide evidence or develop the argument.  "[B]are assertions of futility are
5    insufficient to bring a claim within the futility exception, which is designed to avoid the need
6    to pursue an administrative review that is demonstrably doomed to fail."  Diaz, 50 F.3d at
7    1485.  Plaintiff's record contains "nothing but speculation" that further appeal would have
8    been futile.  Hence, Plaintiff was obligated to pursue a remedy on administrative appeal.
9    Diaz, 50 F.3d at 1486.

10   **III. Conclusion**

11   Plaintiff's LTD benefit plan was covered by ERISA.  Her causes of action for breach
12   of contract and bad faith are preempted by ERISA, and Plaintiff failed to exhaust her
13   administrative remedies under ERISA before commencing this lawsuit.  Therefore, summary
14   judgment must be granted against Plaintiff's claims relating to long term disability benefits.
15   ///
16   ///
17   ///
18   ///
19   ///
20   ///
21   ///
22   ///
23
24

25   [11]Plaintiff briefly asserts that an appeal was not required because the Summary Plan
     Description only indicates that an employee "may" appeal.  This language is irrelevant to
26   Plaintiff's obligation to appeal.  See, e.g., Whitehead v. Oklahoma Gas & Elec. Co., 187 F.3d
     1184, 1190 (10th Cir. 1999) ("it makes no difference whether the [plan] itself explicitly
27   requires exhaustion, because ERISA exhaustion is a judicial, not contractual, doctrine").
28   Plaintiff provides no case law or factual allegations to the contrary.

1    Accordingly,

2        **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment

3    on All Claims Relating to Long Term Disability Benefits [Doc. #19] is **GRANTED**.

4        **IT IS FURTHER ORDERED** that Defendant's Motion to Strike Portions of

5    Plaintiff's Responsive Statement of Facts [Doc. #28] is **DENIED AS MOOT**.

6

7    DATED this 28 day of March, 2003.

8

9

10                               Roslyn O. Silver
11                           United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28